IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THELMA ANN PIERCE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>Defendant. ) | 1:17CV579 |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Thelma Ann Pierce, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 14; see also Docket Entry 13 (Plaintiff's Brief); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 121-26.) Upon denial of that application initially (Tr. 41-56, 72-75) and on reconsideration (Tr. 57-71, 78-82), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 83-85). Plaintiff, appearing

pro se, and a vocational expert ("VE") attended the hearing. (Tr. 25-40.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 9-20.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 8, 187-90), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since March 21, 2013, the application date.
>
> 2. [Plaintiff] has the following severe impairments: diabetes mellitus, depression, and cognitive disorder.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except she is limited to simple, routine and repetitive tasks.
>
> . . .
>
> 5. [Plaintiff] has no past relevant work.
>
> . . .
>
> 9. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.
>
> . . .

2

10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since March 21, 2013, the date the application was filed.

(Tr. 14-20 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro

v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

4

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id.

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of

---

[1]  The Act "comprises two disability benefits programs.  The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed.  [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the
(continued...)

5

several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step,

---

[2] (...continued)
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

6

whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) Plaintiff questions the ALJ's representation that either Stephen Ratliff or Tonetta Watson-Coleman appeared at the hearing by telephone as the VE, because the ALJ "had a tendency to be bogus" (Docket Entry 13 at 2 (citing Tr. 12, 27));

2) the ALJ erroneously stated at the hearing and in her decision that the administrative record contained only one treatment record from treating physician Dr. James Wofford, but the administrative record actually contains multiple treatment records from Dr. Wofford (id. (citing Tr. 12, 17, 38, 191-217));

---

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

3) the ALJ incorrectly indicated in her decision that the administrative record reflected only one follow-up mental health appointment in April 2014, but Plaintiff actually attended four additional appointments on November 15, 2013, January 10, 2014, June 27, 2014, and September 19, 2014 (id. at 2-3 (citing Tr. 18, 30-31); see also id. at 5-8);

4) due to the 12-month duration requirement for disability, the ALJ "didn't want to see the [additional mental health] records to make [her decision] look good on paper" (id. at 3); and

5) the ALJ erred by finding that Counselor Matthew Sills "did not note any cognitive problems" on September 10, 2013, as Counselor Sills diagnosed Plaintiff with anxiety (id. at 3-4).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 3-11.)

## 1. VE

In Plaintiff's first issue on review, she questions the ALJ's representation that either Stephen Ratliff or Tonetta Watson-Coleman appeared at the hearing by telephone as the VE, because the ALJ "had a tendency to be bogus." (Docket Entry 13 at 2 (citing Tr. 12, 27).) Plaintiff's argument lacks any merit.

The ALJ's statement in the introductory paragraph of her decision that "Stephen Ratliff, an impartial [VE], also appeared at the hearing" (Tr. 12 (emphasis added)) likely represents a typographical error, given the ALJ's statement at the hearing that

8

"T[o]netta Watson[-]Coleman is a [VE and] . . . is appearing via phone" (Tr. 27 (emphasis added)), and the inclusion of Watson-Coleman's curriculum vitae in the administrative record (see Tr. 177-80). However, the ALJ's error in that regard remains harmless under the circumstances presented here. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). The ALJ determined Plaintiff did not qualify as disabled using Rules 203.06 and 203.14 of the Medical-Vocational Guidelines (the "Grids") (see Tr. 20 (citing 20 C.F.R., Pt. 404, Subpt. P, App'x 2, §§ 203.06, 203.14)),[5] and neither called on the VE to testify at the hearing (see Tr. 27-40), nor relied in any way on VE testimony in making the step five determination (see Tr. 19-20). Thus, any error by the ALJ regarding the identity of the VE, i.e., whether Stephen Ratliff or Tonetta Watson-Coleman appeared as the VE by telephone, could not have prejudiced Plaintiff.

---

[5] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits h[er] to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

In sum, Plaintiff's first assignment of error entitles her to no relief.

## 2. Dr. Wofford's Treatment Records

Next, Plaintiff contends that the ALJ erroneously stated at the hearing and in her decision that the administrative record contained only one treatment record from treating physician Dr. James Wofford, but the administrative record actually contains multiple treatment records from Dr. Wofford. (See Docket Entry 13 at 2 (citing Tr. 12, 17, 38, 191-217).) Plaintiff's argument ultimately does not entitle her to reversal or remand.

Plaintiff correctly notes that the ALJ stated at the hearing that the administrative record contained only one treatment record from Dr. Wofford, dated December 5, 2012. (Id. (citing Tr. 38).) In that regard, the following exchange occurred between the ALJ and Plaintiff:

Q How long have you been seeing Dr. Wo[f]ford?

A For a long time.

Q Right. <u>I have one treatment note from him in December of 2012</u>. So unless you object, I'd like to order the rest of the records so that I can review them when making my decision.

A I object because you're supposed to have got them. I definitely seen them all those years.

Q So why would you have a problem with me trying to get the records?

A No, you should have those things.

Q But I don't have them, ma'am, so --

A So I ain't going -- I object to it.

(Tr. 38 (emphasis added).) Plaintiff also correctly maintains that the ALJ repeated her statement that the administrative record contained only one treatment note from Dr. Wofford in the ALJ's decision. (Docket Entry 13 at 2 (citing Tr. 17).) The ALJ stated as follows:

> [T]he record contains only one treatment record submitted by Dr. Wofford, dated December 5, 2012, with no other accompanying documentation. When [the ALJ] informed [Plaintiff] that [the ALJ] wished to request additional medical records from Dr. Wofford's office, [Plaintiff] objected to [that] request.

(Tr. 17 (emphasis added) (internal citation omitted).)

The ALJ erred by stating that the administrative record contained only one treatment note from Dr. Wofford (see Tr. 17, 38, 246-49), as the administrative record contains nine additional treatment notes from Dr. Wofford, dated from February 1, 2007, to October 10, 2011 (see Tr. 191-217). However, the ALJ's error in that regard remains harmless under the facts of this case. See generally Fisher, 869 F.2d at 1057 ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). Although Plaintiff claimed disability beginning on January 15, 2007 (see Tr. 121), she did not apply for SSI until March 21, 2013 (see Tr. 121-26). Thus, as Plaintiff can only begin receiving SSI as of the month after the month that she filed such application, see 20

11

C.F.R. § 416.335, Plaintiff must establish that her disability existed during the relevant period from March 21, 2013, to December 16, 2015, the ALJ's decision date. In contrast, all of the treatment notes the ALJ disregarded, covering the time period from February 1, 2007, to October 10, 2011, significantly predate the relevant period in this case. Under such circumstances, Plaintiff has not shown how consideration of those remote treatment records by the ALJ would have changed the outcome in her case.

Moreover, to the extent Plaintiff faults the ALJ for not obtaining any treatment records from Dr. Wofford that post-date the treatment note from December 5, 2012, that argument fails. Plaintiff vehemently objected to the ALJ's request to obtain such records, and Plaintiff cannot claim prejudice arising out of her own objection. (See Tr. 12 ("During the hearing, it came to light that there are likely additional medical records that were not submitted prior to the hearing. The [ALJ] informed [Plaintiff] that [the ALJ] wished to retrieve the outstanding records - specifically, records covering the period following December 2012 - however, [Plaintiff] declined and objected. She adamantly objected to any further development of the record. The [ALJ] observed [Plaintiff's] objection and did not attempt to request any additional medical records.").)

In short, Plaintiff's second assignment of error fails as a matter of law.

### 3. Mental Health Treatment Records[6]

Plaintiff next asserts that the ALJ erroneously indicated in her decision that the administrative record reflected only one follow-up mental health appointment with Monarch in April 2014, but that Plaintiff actually attended four additional appointments on November 15, 2013, January 10, 2014, June 27, 2014, and September 19, 2014. (Docket Entry 13 at 2-3 (citing Tr. 18, 30-31); see also id. at 5-8.) Moreover, Plaintiff speculates that, due to the 12-month duration requirement for disability, the ALJ "didn't want to see the [additional mental health] records to make [her decision] look good on paper." (Id. at 3.) Lastly, Plaintiff contends that the ALJ erred by finding that Counselor Matthew Sills "'did not note any cognitive problems'" on September 10, 2013, as Counselor Sills diagnosed Plaintiff with anxiety. (Id. at 3-4 (quoting Tr. 18, and citing Tr. 282-95).) Plaintiff's assertions fall short.

The ALJ analyzed Plaintiff's mental health treatment as follows:

> In September 2013, [Plaintiff] underwent a comprehensive clinical assessment at Monarch by psychiatrist Dr. [Randall] Purdy. During [Plaintiff's] interview, chief complaints included being tired, angry and having excessive worry. She primarily discussed difficulties in getting along with her siblings. According to her Mental Status exam, she had good concentration, normal flow of thought, intact memory and intact cognitive ability. She was diagnosed with major depressive disorder, but <u>her examiner, [Counselor] Sills, did not note any cognitive</u>

---

[6] As Plaintiff's third, fourth, and fifth assignments of error all involve the ALJ's handling of Plaintiff's mental health records, this Recommendation will discuss those three assignments together.

> problems or diagnoses. He recommended [Plaintiff] for outpatient services. <u>The record shows only one follow-up appointment in April 2014</u>, during which she reported that her mood was better. She was being prescribed Celexa at the time.

(Tr. 18 (internal citations omitted) (emphasis added).)

As an initial matter, the ALJ did not err by stating that "[t]he [administrative] record shows only one follow-up appointment in April 2014" (<u>id.</u>), as the administrative record indeed contains documentation of only one follow-up mental health appointment on April 4, 2014 (<u>see</u> Tr. 295), after Plaintiff's initial evaluations with Monarch in September 2013 (<u>see</u> Tr. 282-94).

However, Plaintiff appears to fault the ALJ for not requesting additional records from Monarch, after the possible existence of such records arose at the hearing, speculating that, due to the 12-month duration requirement for disability, the ALJ "didn't want to see the [additional mental health] records to make [her decision] look good on paper." (Docket Entry 13 at 3 (citing Tr. 30-31).)

The following exchange between the ALJ and Plaintiff occurred at the hearing regarding additional Monarch records:

> ALJ: All right. So as I mentioned before, the law has certain requirements in order for me to make a finding of disability and one of the things that has to be considered is that I need medical documentation to support the allegations that you are making. I did receive your forms wherein you mentioned treatment that you recently had and I started the process of trying to obtain these records, but I want to discuss with you whether or not you've had any recent treatment. <u>We did receive records from Monarch. The last treatment was April of 2014.</u>

14

>    CLMT: No, it was December of 2014.
>
>    ALJ: All right. Well, <u>they didn't send me those records. They only sent me up until April of 2014</u>. So I'm not sure why they would not send the rest of the records. How many times did you go between April and December?
>
>    CLMT: Let's see -- let's see, one, two -- about three times plus see every 12 -- [therapist] Megan [Blankman] every 12 weeks.
>
>    ALJ: Would it be September of 2014? Was that the last time?
>
>    CLMT: Yeah, I think so, something like that. It wasn't April. Definitely not.

(Tr. 30-31 (emphasis added).)

Plaintiff attached to her brief four additional treatment records from Monarch on November 15, 2013, January 10, 2014, June 27, 2014, and September 19, 2014. (Docket Entry 13 at 5-8.) As the record before the ALJ does not contain those records, the ALJ apparently did not request additional records from Monarch following the hearing. However, Plaintiff's suggestion that the ALJ intentionally failed to request those Monarch records to prevent Plaintiff from demonstrating that her mental impairments lasted for at least 12 months constitutes rank speculation. (See id. at 3.) The ALJ found that Plaintiff's depression and cognitive disorder constituted severe impairments at step two of the SEP (see Tr. 14), which means that the ALJ found that those mental impairments had lasted, or could be expected to last, a continuous period of at least 12 months, see 20 C.F.R. §§ 416.909, 416.920. In actuality, Plaintiff's vehement objection to the ALJ's request

15

to obtain additional records from Dr. Wofford constitutes a less speculative explanation for the ALJ's failure to request additional records from Monarch.

Even assuming, arguendo, that the ALJ erred by failing to request additional records from Monarch, any such error remains harmless under the circumstances of this matter. See generally Fisher, 869 F.2d at 1057 ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). This Court may not consider new evidence that Plaintiff did not submit to the ALJ or the Appeals Council. See Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996). Instead, the Court can remand the case under sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider the new evidence, if Plaintiff can demonstrate that the evidence qualifies as both new and material, and that good cause exists for the failure to submit the evidence to the ALJ or the Appeals Council. See Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). "Evidence is material if there is a reasonable probability that the new evidence would have changed the outcome." Id. at 96.

Here, Plaintiff's new treatment notes from Monarch fail to qualify as "material." A comparison of the Monarch treatment notes in the administrative record with the new treatment notes attached

to Plaintiff's brief reveals that Plaintiff's mental status examinations reflected similar (and not worsening) findings, that Plaintiff's diagnosis remained the same, that her treatment remained the same with the exception of an increase in her Celexa, and that her Global Assessment of Functioning ("GAF") scores remained in the same general category. (Compare Tr. 282-95, with Docket Entry 13 at 5-8.)[7] Under such circumstances, no basis for a sentence six remand exists. See Riffle v. Shalala, No. 93–2168, 47 F.3d 1165 (table), 1995 WL 79999, at *4 (4th Cir. Feb. 28, 1995) (unpublished) (declining to remand under sentence six of 42 U.S.C. § 405(g), where new evidence qualified as merely cumulative of earlier clinical findings).

Finally, Plaintiff challenges the ALJ's statement that Counselor Sills diagnosed Plaintiff "with major depressive disorder, but . . . did not note any cognitive problems or diagnoses," because Plaintiff contends that Counselor Sills diagnosed her with anxiety. (See Docket Entry 13 at 3 (citing Tr. 18).) Plaintiff's argument fails, as Counselor Sills diagnosed Plaintiff with major depressive disorder, recurrent, moderate (see Tr. 288, 289), which, under the Commissioner's regulations,

---

[7] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000). A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

qualifies as an affective disorder, not a cognitive disorder. Compare 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.04 (Affective Disorders), with, id., § 12.02 (Organic Disorders). Moreover, even if Counselor Sills had diagnosed Plaintiff with "anxiety," the Commissioner's regulations similarly categorize that condition as an anxiety disorder rather than a cognitive disorder. Compare 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.06 (Anxiety Disorders), with, id., § 12.02 (Organic Disorders).

Accordingly, the Court should not grant Plaintiff any relief arising out of her third, fourth, and fifth assignments of error.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 23, 2018